IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER ENSOR                    *

v.                                   *        Civil Action No.  CCB-21-324

WELLS FARGO BANK NATIONAL            *
ASSOCIATION, et al.

                            ************

## MEMORANDUM

Pending before the court is a motion for leave to file a first amended complaint (ECF 18,

Mot. to File Am. Compl.) brought by plaintiff Christopher Ensor, and a motion to dismiss brought

by defendants Wells Fargo Bank, NA and Wells Fargo & Company (ECF 10, Mot. to Dismiss).

The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md.

2021). For the reasons that follow, the court will deny the plaintiff's motion, and grant the

defendants' motion.

## BACKGROUND

This litigation arises from a mortgage dispute between plaintiff Christopher Ensor and his

mortgage loan servicer, Wells Fargo Bank, N.A. ("Wells Fargo Bank") and its holding company,

Wells Fargo & Company ("Wells Fargo & Co.") (collectively, "Wells Fargo"). On February 11,

2009, Mr. Ensor entered into a mortgage agreement with Wells Fargo Bank, borrowing

$114,401.16 at 9.38% interest secured by the property known as 3815 Roland Avenue, Baltimore,

Maryland 21211. (ECF 18-2, FAC, ¶ 60).

Several years after entering into the mortgage, Mr. Ensor became unable to make monthly

payments and defaulted in 2013. (*Id.* ¶¶ 61-62). Though one subsequent payment modification was

approved, Mr. Ensor again defaulted in 2015. (*Id.* ¶¶ 64, 70). Mr. Ensor applied for another

1

mortgage modification multiple times, each of which was denied and ultimately resulted in the 2016 foreclosure of the 3815 Roland Avenue property. (*Id.* ¶¶ 72-74, 77).

In a 2018 letter, Wells Fargo admitted that Mr. Ensor's denials were based on a software miscalculation of one of the factors used to determine whether he qualified for modification to his mortgage. (*Id.* ¶ 19). Mr. Ensor contends that this error was more than miscalculation: rather, he asserts that the defendants knew or should have known that he qualified for a mortgage modification at the time of the denials and subsequent foreclosure. (*Id.* ¶¶ 76, 83).

Mr. Ensor originally filed suit against Wells Fargo Bank and Wells Fargo & Co. on February 8, 2021. In his complaint, he alleged negligence (Count I), wrongful foreclosure (Count II), violations of the Maryland Consumer Protection Act ("MCPA") and Maryland Consumer Debt Collection Act ("MCDCA") (Count III), intentional infliction of emotional distress ("IIED") (Count IV), and breach of contract (Count V). (ECF 1, Compl.). The defendants moved to dismiss Mr. Ensor's action on April 26, 2021. (ECF 10). On July 19, 2021, Mr. Ensor moved to amend his complaint (ECF 18) to add additional factual information to the allegations, which the defendants subsequently opposed (ECF 29, Opp'n; *see also* ECF 30, Reply). After moving for and being granted additional time to respond to the defendants' motion to dismiss on three separate occasions, Mr. Ensor responded on July 30, 2021. (ECF 26, Opp'n), to which the defendants replied (ECF 31, Reply). The court now considers both motions.

## DISCUSSION

### I.   Standard of Review

Federal Rule of Civil Procedure Rule 15 provides that "a party may amend its pleading. . . with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Federal Rule of Civil Procedure 15 further provides that "[t]he court should freely give leave when justice

2

so requires." *Id.* The Fourth Circuit has clarified that courts should liberally allow amendment, and leave to amend should be denied only if it "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

## II.  Futility

### a.  The Standard for Futility

A proposed amendment is futile when it "could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *see also Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 F. App'x 256, 267-68 (4th Cir. 2016) (per curiam) (affirming district court's denial of leave to amend because the amended complaint would not survive a Rule 12(b)(6) motion to dismiss).[1]

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts

---

[1] Unpublished cases are cited not for any precedential value, but for the persuasiveness of their reasoning.

3

"must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

### i. The Amended Complaint Sufficiently Alleges Causation

Preliminarily, Wells Fargo contends that Mr. Ensor has failed to sufficiently allege "a causal connection between the injury and the conduct complained of that is fairly traceable." *Frank Krasner Enters., Ltd. v. Montgomery Cnty., Md.*, 401 F.3d 230, 234 (4th Cir. 2005) (internal quotations omitted). Upon review of the pleadings, the court finds that Mr. Ensor has sufficiently pled that Wells Fargo's decision not to offer him a mortgage modification caused the damages alleged in the complaint: specifically, the loss of his house.

In the First Amended Complaint, Mr. Ensor first identifies that "Wells Fargo had discovered another error in its mortgage modification software which caused the Bank to wrongfully deny mortgage modifications to 625 customers." (ECF 18-2 ¶ 35). He further alleges that Wells Fargo informed him that he was one of the customers denied a mortgage because of the tool's failure, lending support to the assertion that he would have qualified for a modification were it offered to him. (*Id.* ¶¶ 84, 85). He specifically argues that this denial "caused Plaintiff to be disqualified from a modification which would have allowed Plaintiff to remain current under the loan he had with Defendant Wells Fargo," incurring damages. (*Id.* ¶ 97).

These allegations of causation are not merely conclusory. While Mr. Ensor does claim that he was in default for months and "financially unable to keep up with the necessary payments" for his loan, (*id.* ¶¶ 73, 77), he also alleged that he would have been able to make his monthly payments

4

with a modification, (*id.* ¶ 88). In support of this proposition, he states that he previously received a temporary modification that reduced his monthly payments, and that he successfully made these reduced payments on it, avoiding default and loss of his property through the time of expiration of that modification. (*Id.* ¶ 87). Combined, these allegations are sufficient to meet Mr. Ensor's burden to properly plead causation at the motion to dismiss stage of litigation.[2]

### ii.  Count I: Negligence Is Inadequately Pled

In order to state a negligence claim under Maryland law, a plaintiff must allege facts demonstrating four elements: "a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 778 (4th Cir. 2013) (*citing Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531 (1986)).

Wells Fargo argues that Mr. Ensor's claim fails as a matter of law because Wells Fargo did not owe him a duty of care. The defendants cite several cases holding that a lending bank owes its typical, arm's-length customers no fiduciary duty. *See Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 633 (D. Md. 2009) (quoting *Yousef v. Trustbank Savs., F.S.B.*, 81 Md. App. 527, 536 (1990)) ("It is well established that the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature") (internal quotations omitted); *Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697, 703 (D. Md. 2012) (dismissing a plaintiff's negligence claim against a bank for a lack of duty when the plaintiff failed to plead any additional special relationship between the parties); *Spaulding*, 714 F.3d at 780. Further, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law

---

[2] The court does not need to address Wells Fargo's second preliminary concern whether or not Wells Fargo & Co. is properly named as a defendant.

5

independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Jacques*, 307 Md. at 534 (citation omitted).

To contend that a special relationship exists, Mr. Ensor pleads that Wells Fargo "undertook to review Plaintiff's mortgage loan for potential modification" and "[i]n doing so, [the Bank] owed Plaintiff a duty to exercise reasonable care when determining whether Plaintiff was eligible for a mortgage modification." (ECF 18 ¶ 99). "Special circumstances," however, include when the lender (1) "took on extra services on behalf of [the borrowers] other than furnishing. . . money" or (2) "exercised extensive control" over the process of modification; these may lead courts to find a duty running from lender to customer. *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 366 (2012) (citing *Parker v. Columbia Bank*, 91 Md. App. 346, 370-371 (1992)). But "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Kuechler,* 602 F. Supp. 2d at 633–34 (quoting *Parker,* 91 Md. App. at 369).

### A. Wells Fargo's Extra Services Were Not Extraordinary

First, loan modifications are not the type of "truly extra, out of the ordinary services" that the Maryland Court of Appeals has found to trigger this duty. *Parker*, 91 Md. App. at 371. Specifically, offering extra-contractual loan modification is not one such service that creates a "special circumstance," and thus does not give rise to a duty on the part of the lender to the consumer. *See Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 252 (D. Md. 2013) (plaintiffs failed to state a negligence claim against their servicer based on its "negligent processing, or failure to process, their request for loan modification, which was an entirely different transaction" than their mortgage contract); *see also Goss v. Bank of Am., N.A.*, 917 F.

6

Supp. 2d 445, 452 (D. Md. 2013) (dismissing a plaintiff's negligence claim for lack of a duty owed where no enforceable contract governing the loan modification process existed independent of the parties' original mortgage agreement). As detailed below, neither extra services nor extensive control have been properly alleged to have resulted in the creation of a duty in Mr. Ensor's case.

The offers to consider modification in the present case were among the services normally provided by a bank for its customer such as "investigations, evaluations, and inspections that a prudent lender makes as a part of any . . . loan." *Parker*, 91 Md. App. at 371; *see also Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 803 (D. Md. 2013) (loan modification assistance is representative of "a typical, arm's-length creditor/debtor relationship founded on a mortgage loan"); *Maggio v. Cenlar Bank, FSB*, No. CCB-19-1939, 2020 WL 1331930, at *5 (D. Md. Mar. 23, 2020) (quoting *Currie*, 950 F. Supp. 2d at 803) ("Vulnerable" borrowers seeking a loan modification did not sufficiently allege special circumstances because "th[e] case present[ed] a typical, arm's-length creditor/debtor relationship founded on a mortgage loan").

Nowhere in the complaint does Mr. Ensor allege that Wells Fargo contractually bound itself in a subsequent agreement to modify its loan. Rather, Mr. Ensor asserts that the company violated its duty by merely "continuing to offer" mortgage modifications using faulty software. (ECF 18 ¶ 101). Mr. Ensor provides no caselaw where a court found such offers to constitute extra services giving rise to the creation of a duty.

## B. The Test for "Extensive Control" Is Not Met

Second, Mr. Ensor attempts to distinguish the cases cited by the defendants as being instances where the lender did not possess "exclusive control" over the manner and method of decision-making, *see Green*, 927 F. Supp. 2d 244, sometimes because the modification initiatives were backed by federal programs. *See Goss*, 917 F. Supp. 2d at 452; (ECF 26 at 19-20). Mr. Ensor

7

contends that his complaint contained allegations of exclusive control: that Wells Fargo utilized an automated tool to analyze modification applications (ECF 18 ¶¶ 15, 20), failed to verify that its calculations were correct (*id.* ¶ 20), and did not make its tool or decision-making process public (*id.* ¶ 92). His response brief additionally alludes to the Consent Order between Wells Fargo and the Office of Comptroller of Currency ("OCC") as the source of the bank's duty to offer mortgage modifications to him. (*See* ECF 26 at 20-21) ("Ensuring compliance [with the OCC consent order] was within the exclusive control of Defendants").

The OCC Consent Order, however, is an agreement between the lender and the government, a third party. Such an order, if it does indeed require the offer to modify to be made correctly, definitionally *removes* Wells Fargo from the role of "exclusive" decisionmaker. As in *Goss*, 917 F. Supp. 2d at 452, the federal government has regulated the method and manner of the interaction between parties, thus preventing the formation of a fiduciary relationship by special circumstance. While Wells Fargo retained a degree of control over how it determined eligibility for mortgage modifications, this control does not rise to the level of "extensive control" necessary to be considered a special circumstance that gives rise to a duty. As in his earlier argument regarding extra services, Mr. Ensor fails to cite a single case, controlling or otherwise, where a court has found the lender to have such extensive control over the mortgage modification process at issue as to create a fiduciary relationship under the *Parker* factors.

Because Mr. Ensor failed to sufficiently allege that special circumstances were created via the rendering of extra services, or that extensive control over the modification process existed, he does not properly plead the existence of a duty to offer mortgage modification. As the proposed amendments to the complaint do not supplement or alter the allegations related to Mr. Ensor's negligence claim, amendment with respect to this count is futile.

8

### iii. Count II: 'Wrongful Foreclosure' Is Not a Cognizable Claim Under Maryland Law

In the second count of his amended complaint, Mr. Ensor argues that Wells Fargo "wrongfully foreclosed" on his property. (ECF 18-2 ¶ 104). He argues that the foreclosure was "unlawful and/or unfair because Wells Fargo did not first notify Plaintiff that he could cure his default by accepting a mortgage modification" for which he qualified. (*Id.*).

Despite Mr. Ensor's characterization of his claim as one for "wrongful foreclosure," courts have found that "no such cause of action exists in Maryland." *See Littlejohn v. BWW L. Grp. & Assocs.*, 2014 WL 6391119, at *4 (D. Md. Nov. 14, 2014) (citing *Davis v. Wilmington Fin., Inc.*, 2010 WL 1375363, at *7 (D. Md. Mar. 26, 2010)) ("Plaintiffs cite no authority, and the Court can find none, that 'Wrongful Foreclosure' is a separate cause of action in Maryland."); *see also Womack v. Freedom Mortg.*, No. GJH-19-3182, 2020 WL 6161709, at *4 (D. Md. Oct. 21, 2020).

In response to Wells Fargo's motion to dismiss, Mr. Ensor clarified that his wrongful foreclosure claim arises out from his Deed of Trust's notice requirement that permitted him to avoid acceleration and foreclosure by accepting a mortgage modification. (*See* ECF 26 at 21). Such a claim, however, is best described as a "breach of contract" that will be addressed accordingly. (*See* Section vi).

### iv. Count III: The Proposed Amended Complaint Fails to Adequately Allege a MPCA Claim

Count III of Mr. Ensor's complaint alleges that Wells Fargo's conduct violated MCPA § 13-303, which prohibits "unfair, abusive, or deceptive trade practices." Md. Code Ann., Com. Law. § 13-303.; (*Id.* ¶ 108). Such MCPA claims "sound in fraud," as the Act prohibits "any. . . [f]alse, falsely disparaging, or misleading oral or written statement. . . which has the capacity, tendency, or effect of deceiving or misleading consumers." *Bowers v. Bank of America, N.A.*, 905

9

F. Supp. 2d 697, 702 (D. Md. 2012) (citing *Haley v. Corcoran,* 659 F. Supp. 2d 714, 724 n. 10 (D. Md. 2009)); Md. Code Ann., Com. Law. §13-301. To state a claim under the MCPA, a consumer must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Alexander v. Carrington Mortg. Servs., LLC*, ___ F.4th ____, 2022 WL 164018 at \*7 (4th Cir. 2022) (*quoting Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)).

Mr. Ensor fails to adequately plead reliance. In his response to the motion to dismiss, Mr. Ensor does not direct the court to specific demonstrations of reliance. There is only one such allegation in the amended complaint. (*See* ECF 18-2 ¶ 77 ("Plaintiff Christopher Ensor relied on Defendant Wells Fargo Bank, N.A.'s misrepresentation that he was ineligible for a mortgage modification, resulting in Defendant Wells Fargo Bank, N.A. proceeding with foreclosure of Plaintiff's primary residence")). This single allegation is a "threadbare recital [] of the elements of a cause of action," not a "plausible claim for relief." *Alexander*, ___ F.4th ____, 2022 WL 164018 at \*7 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009)); *cf Goss*, 917 F. Supp. 2d at 450 (failing to find reliance where plaintiffs *rejected* the allegedly misleading offer for mortgage modification and where they were not induced to take any action after being told no modification was available); *Green*, 927 F. Supp. 2d at 255 (finding no reliance where the denial of a mortgage modification was not available and the plaintiff merely pled that it "*could* cause a reasonable consumer to. . . be [led] into a false state of comfort and thereby not assert foreclosure objections") (internal quotations omitted) (citation omitted).[3]

---

[3] In Count III of the First Amended Complaint, Mr. Ensor additionally pleads a related violation of the Maryland Consumer Debt Collection Act (MCDCA), Md. Code Ann. Com. Law § 14-202(8). (*See* ECF 18-2 ¶ 109). Under the MCDCA, a defendant is liable if it acted with "knowledge as to the *invalidity* of the debt." *Stewart*, 859 F. Supp. 2d at 769. As there is no showing that the debt

## v. Count IV: The Amended Complaint Fails to Support a Claim of Intentional Infliction of Emotional Distress

Under Maryland law, to prevail on a claim for intentional infliction of emotional distress a plaintiff must establish: (1) the defendant engaged in intentional or reckless conduct; (2) the conduct was extreme or outrageous; (3) the wrongful conduct caused the emotional distress; and (4) the emotional distress was severe. *Batson v. Shiflett*, 325 Md. 684, 733 (1992); *see also Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 528 (D. Md. 2016). This cause of action "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct," *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992). Claims for intentional infliction of emotional distress are "rarely viable." *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011). Indeed, "extreme or outrageous" conduct is only that which exceeds "all possible bounds of decency, and [is] to be regarded as atrocious, and utterly intolerable in a civilized community." *Lasater v. Guttman*, 194 Md. App. 431, 448 (Ct. Spec. App. Md. 2010).

Here, Mr. Ensor alleges Wells Fargo "failed to properly verify or audit mortgage modification software on which its customers' homes and wellbeing depended," allowed systemic errors to persist for five to eight years, ignored consent decrees, failed to reform verification practices, concealed the discovery of its errors from the government and public, and failed to identify other errors. (ECF 18-2 ¶ 114). He further contends that the company's board and executive leadership abandoned their oversight responsibilities "to a shocking degree" evincing

was invalid or that Wells Fargo Bank was not entitled to collect it, Mr. Ensor's MCDCA claim also will be dismissed.

"reckless disregard" for the possibility that their conduct would cause emotional distress to their customers. (*Id.* ¶¶ 115, 116). First, despite their powerful language, most of the specific factual allegations sound in negligence and do not rise to the level of intentional conduct. Failures to audit software or fully comply with consent decrees need not be intentional or even reckless acts. The possible exception is the plaintiff's claim that Wells Fargo concealed its discovery of the software errors from regulators and customers. Even this, however, does not pass muster under Maryland's requirement that "extreme or outrageous" conduct exceed "all possible bounds of decency." *Lasater*, 194 Md. App. at 448; *see also Asafo-Adjei v. First Sav. Mortg. Corp.*, 2010 WL 730365, at *5 (D. Md. Feb. 25, 2010) ("[T]he Court cannot imagine *any* set of facts surrounding a mortgage transaction that would support an inference of extreme and outrageous conduct").

Moreover, Mr. Ensor alleges "severe emotional distress," but provides no details as to how that stress manifested or why it goes beyond the typical emotional reaction to losing one's home.[4] *See Larson v. Nationstar Mortg., LLC*, 2018 WL 5921406, at *5 (D. Md. Nov. 13, 2018) (dismissing an IIED claim when the court could not infer symptoms beyond those that would generally occur from participating in foreclosure proceedings).

As the conduct alleged is not clearly intentional nor outrageous, and as Mr. Ensor fails to plead any specific details regarding the manifestation of his emotional distress, the plaintiff's IIED claim would not survive a motion to dismiss.

---

[4] In his response to Wells Fargo's motion to dismiss, Mr. Ensor cites the distress alleged earlier in his complaint. (ECF 26 at 24) (citing ECF 18 ¶ 89 (formerly ¶ 78 in the original complaint)). This description of the distress, however, is also conclusory, merely stating that Mr. Ensor suffered generic "emotional distress" and various economic damages stemming from the foreclosure. (ECF 18 ¶ 89). An earlier allegation that Mr. Ensor suffered from "stress-related illness" and "broken marriages" similarly lacks the clarity and detail necessary to survive a Rule 12(b)(6) motion. (ECF 18 ¶ 57).

12

### vi. Count V: Breach of Contract Is Insufficiently Pled

Mr. Ensor's breach of contract claim fares no better. Mr. Ensor contends that Wells Fargo Bank breached the terms of its Deed of Trust by giving inadequate notice to Mr. Ensor before foreclosing. (ECF 18 ¶¶ 128-29). Specifically, Mr. Ensor argues that the notice must have included notification that he could have "cure[d] his default and avoid acceleration and foreclosure by accepting a mortgage modification." (*Id.* ¶ 129).

As Wells Fargo shows, however, the form Deed of Trust contains no requirement that the bank notify Mr. Ensor about modification of his mortgage. Rather, it states:

Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach. . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower, by which default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.

(ECF 10 at 26 (citing Deed of Trust § 22)).[5] The "action required to cure the default." is interpreted broadly by Mr. Ensor to include "any action borrows [sic] could take to cure default," (ECF 26 at 26). To support this interpretation, he references a canon found in the Restatement (Second) of Contracts § 203 (1981). ("[A]n interpretation that gives a reasonable and effective meaning to all terms is preferred to an interpretation that leaves a part unreasonable or no effect").

The better interpretation of this sufficiently unambiguous language is that the singular action that cures default is the payment of all past due mortgage payments. In Maryland, after notice of a pending foreclosure is given, "the mortgagor or grantor of residential property has the right to cure the default by paying all past due payments, penalties, and fees and reinstate the loan

---

[5] Though the motion to dismiss quotes the Deed of Trust and the plaintiff does not dispute its plain language, no copy of the deed appears to be attached to any filing.

13

at any time up to 1 business day before the foreclosure sale occurs." *See* Md. Code Ann. Real Prop. § 7-105.1(p)(1). No right to cure a default via modification of contractual terms is assumed in a mortgage under the state's code. Finding such a right would require reading into the contract terms that do not exist.

Two documents support Wells Fargo's position on this claim. First, Mr. Ensor's Mortgage Note, executed concurrently with the Deed of Trust, informs and confirms this interpretation. The Note describes a cure for deficiency: "If I am in default, the Note Holder [Wells Fargo] may send me a written notice telling me that *if I do not pay the overdue amount by a certain date*, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount." (ECF 31-1, Mort. Note, at 3) (emphasis added). The Mortgage Note does not list any other alternative method for curing a default. (*Id.*).

Second, the actual default notice sent by Wells Fargo provides that, "[u]nless the payments on [Mr. Ensor's] loan can be brought current by January 11, 2016, it will become necessary to [accelerate] [the] Mortgage Note and pursue the remedies provided for in [the] Mortgage or Deed of Trust, which include foreclosure." (ECF 10-C, Not. of Default). [6, 7] Such notice, specifying the exact amount required to be paid by a specific date to avoid foreclosure, has been considered compliant with the requirements of similar form Deeds of Trust. *See, e.g., Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 117 (D.D.C. 2013), *aff'd in part sub nom. Henok v. JPMorgan Chase Bank, N.A.*, 2013 WL 4711675 (D.C. Cir. Aug. 2, 2013). This language is additional proof

---

[6] The court may consider Wells Fargo's notice and Deed of Trust in assessing the breach of contract claim, as they are documents integral to and specifically referenced by the complaint. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[7] Wells Fargo references Exhibit 10-C, which does not appear to be attached to the filing. This memorandum quotes the attribution of this text, undisputed by Mr. Ensor, found in Wells Fargo's motion to dismiss. (ECF 10 at 20).

14

Case 1:21-cv-00324-CCB   Document 32   Filed 02/04/22   Page 15 of 15

of Wells Fargo's position that Mr. Ensor's form Deed of Trust did not contain alternative means to cure default. If Wells Fargo intended to provide Mr. Ensor with non-traditional, contractually protected alternative cures for default, the Deed could have contained explicit language outlining what other options existed.

## CONCLUSION

As the motion for leave to file a first amended complaint is futile with respect to all counts, it will be denied. Consequently, the defendants' motion to dismiss will be granted.

A separate Order follows.

$\frac{2/4/22}{\text{Date}}$

Catherine C. Blake
United States District Judge